No. 21-14230-G

## In the United States Court of Appeals
## for the Eleventh Circuit

_____

RICKEY LEE CHRISTMAS,

*Plaintiff/Appellant*

v.

LIEUTENANT J. NABORS
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY,
SERGEANT MARSHA HILL,
INDIVIDUALLY AND IN HER OFFICIAL CAPACITY,

*Defendants/Appellees*

_____

On Appeal from the United States District Court
for the Middle District of Florida

Case No. 8:20-cv-259-TPB-AAS

_____

## REPLY BRIEF OF APPELLANT
_____

Jodi A. Avila
Baker & McKenzie, LLP
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
jodi.avila@bakermckenzie.com
Telephone: 305-789-8900

Adrienne L. Harreveld
Baker & McKenzie, LLP
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
adrienne.harreveld@bakermckenzie.com
Telephone: 305-789-8900

Counsel for Appellant, Ricky L. Christmas

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

**Ricky Lee Christmas**
**Case No. 21-14230-G**

Appellant Ricky Lee Christmas files this Certificate of Interested Persons and Corporate Disclosure Statement, listing in alphabetical order the parties and entities interested in this appeal, as required by Eleventh Circuit Rule 26.1:

Arnold-Sansone, Amanda, United States Magistrate Judge

Avila, Jodi, Baker & McKenzie, LLP, Attorney for Appellant, Ricky Lee Christmas

Baker McKenzie LLP, Counsel for Appellant, Ricky Lee Christmas

Barber, Thomas P., United States District Judge

Dixon, Ricky D., Secretary, Florida Department of Corrections

Harreveld, Adrienne, Baker & McKenzie, LLP, Attorney for Appellant, Ricky Lee Christmas

Hill, Marsha, Sergeant, Polk County Jail

Judd, Grady, Sheriff, Polk County, Florida

Moody, Ashley, Florida Attorney General

Nabors, Lieutenant J., Polk County Jail

Trohn, Jonathan B., Campbell, Trohn, Tamayo & Aranda, P.A., Attorney for Appellees, Lt. J. Nabors and Sergeant Marsha Hill

Vasquez, Jennifer M., Campbell, Trohn, Tamayo & Aranda, P.A., Attorney for

Appellees, Lt. J. Nabors and Sergeant Marsha Hill.

# TALE OF CONTENTS

INTRODUCTION ................................................ **Error! Bookmark not defined.**

ARGUMENT....................................................... **Error! Bookmark not defined.**

I.    Christmas Adequately Alleged a First Amendment Free Speech Claim and Sixth Amendment Claim.................................... **Error! Bookmark not defined.**

II.   The District Court Erred in Dismissing Christmas' Fourteenth Amendment Due Process Claim............................................ **Error! Bookmark not defined.**

III.   The District Court Erred in Dismissing Christmas' Americans with Disabilities Act Claim........................................ **Error! Bookmark not defined.**

IV.   The District Court Erred in Dismissing Christmas' Retaliation Claim. **Error! Bookmark not defined.**

V.    The District Court Erred in Dismissing Christmas' Deliberate Indifference Claim When Officials Deprived Christmas Necessary Medical Care. .........**Error! Bookmark not defined.**

CONCLUSION ................................................... **Error! Bookmark not defined.**

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Amin v. Smith*,
  511 F.3d 1320 (11th Cir. 2008) ....................................................4, 9

*Bell v. Wolfish*,
  441 U.S. 520 (1979) .......................................................................10

*Bircoll*, 480 F.3d at 1083 ....................................................................13

*Boxer v. Harris*,
  437 F.3d 1107 (11th Cir. 2006) ......................................................5

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
  116 F.3d 1364 (11th Cir. 1997) ....................................................13

*Ford v. Hunter*,
  534 F. App'x 821 (11th Cir. 2013) ..................................................5

*Fredricks v. City of N.Y.*,
  2013 U.S. Dist. LEXIS 31633 (S.D.N.Y. Mar. 4, 2013) ................13

*Gee v. Pacheco*,
  627 F.3d 1178 (10th Cir. 2010) ......................................................6

*Haines v. Kerner*,
  404 U.S. 519 (1972) .......................................................................13

*Jackson v. Ward*,
  2022 U.S. Dist. LEXIS 51028 (S.D. Ga. March 1, 2022) ...............12

*Magiaracina v. Penzone*,
  849 F.3d 1191 (9th Cir. 2017) ..............................................5, 6, 7, 8

*Mathews v. Crosby*,
  480 F.3d 1265 (11th Cir. 2007) ......................................................9

*Merriweather v. Zamora*,
  569 F.3d 307 (6th Cir. 2009) ..........................................................5

*Mitchell v. Duval Cty. Jail*,
    10 F.4th 1226 (11th Cir. 2021)......................................................................4, 9

*Pesci v. Budz*,
    935 F.3d 1159 (11th Cir. 2019)...............................................................6

*Rancourt Little Mt. Woodell v. Wetzel*,
    No. 20-3235, 2022 U.S. App. LEXIS 33531 (3d Cir. Dec. 6, 2022)..................4

*Saleem v. Evans*,
    866 F.2d 1313 (11th Cir. 1989)...............................................................6

*Torres v. Miami-Dade Cty.*,
    734 F. App'x 688 (11th Cir. 2018).............................................................12, 14

*Williams-Bey v. Carpenter*,
    No. 14-00490-CG-C, 2015 U.S. Dist. LEXIS 99266 (S.D. Ala.
    June 30, 2015).................................................................................11

*Wooden v. Armenteros*,
    756 F. App'x 951 (11th Cir. 2018).................................................................5

**Statutes**

American with Disabilities Act, 42 U.S.C. § 12101, *et seq* ........................ 2, 13,14

## **INTRODUCTION**

First, the policy and practice of copying legal mail using a copy machine with a memory chip and uploading that privileged communication to a database to be accessed via a central kiosk chills, inhibits, and interferes with Christmas' First and Sixth Amendment rights. The constitutional requirement that legal mail must be opened in the presence of the inmate to whom it is addressed, while critical, does not speak to the safeguards necessary *after* the legal mail is opened where, as here, the prison officials require the inmate to make an electronic copy of the communications. The record is devoid of any facts to discern the penological purpose to scan legal mail to a memory chip and central kiosk *after* the mail has been opened in the detainee's presence. The deference afforded by courts to prison officials is not without limitations. Rather, the decisions, practices, and programs of a jail are always tempered by the constitutional rights of those individuals within the officials' care. Christmas' constitutional rights, and the violation of those rights, as set forth in the Amended Complaint, trump where, as here, the record is devoid of a penological justification for the conduct at issue.

Second, for more than two years, Christmas, a pretrial detainee housed in the medical dorm was denied access to all recreation, both indoor and outdoor, because of his housing status, as opposed to any legitimate purpose. Indeed, the Director of Nursing opined that there was no medical reason that Christmas could not participate

1

in recreation. Notwithstanding, he was repeatedly denied his requests to exercise. Defendants contend that dismissal was proper because Christmas failed to allege "that he was denied all movement." Answer Brief at 12 ("[H]e does not allege that he was bedridden or was not permitted to move around."). However, the standard to determine whether a detainee was unconstitutionally punished prior to an adjudication of guilt is not whether the detainee was "bedridden or was not permitted to move around," as Defendants contend. *Id*. Rather, the determination turns on whether the detainee was deprived the right to exercise for an extended period of time for a legitimate government purpose or as a punishment. Here, Defendants steadfast refusal to grant Christmas access to recreation, notwithstanding medical advice to the contrary, amounts to a punishment in violation of the Fourteenth Amendment.

Third, the District Court also erred in dismissing the Amended Complaint, because Christmas properly stated *prima facie* claims under the American with Disabilities Act ("ADA") and Rehabilitation Act. As Defendants recognize, *pro se* complaints are construed liberally. Liberal construction means that the istrict court must look beyond the legal theories pled to determine if the allegations provide for relief on any possible theory. Here, the facts alleged stated a *prima facie* claim under the ADA an Rehabilitation Act. Contrary to Defendants' contention, failure to include the word "disability" in the complaint is not fatal. Rather, the facts alleged

must state that the plaintiff suffered a physical or mental impairment that substantially limits one or more major life activities.    That is precisely what Christmas alleged in the Amended Complaint.  Specifically, that he suffered from mobility issues that impaired his ability to walk and required the use of a cane. Christmas also alleged that Defendants discriminated against him by refusing him access to outdoor recreation. Defendants disregard these allegations and arguments, completely ignore the case law cited in support, Initial Brief at 29–30, and instead argue that dismissal was proper because Christmas did not allege that he requested an accommodation.  Yet, "accommodation" claims are different, and not at issue in this case.  Accordingly, dismissal was improper.

Finally, with regard to Christmas' retaliation claim, Defendants characterize their conduct of moving Christmas to open population as "responding to [Christmas'] grievances and granting his requests," Answer Brief at 17.  However, at the pleading stage, the plaintiff's allegations are taken as true.   Here, Christmas alleged that Defendants retaliated against him for requesting recreation by moving him out of the medical dorm prematurely and stripping him of his cane: "Lt. Nabors took my ca[ne] and put me in more pain just because I ask for recreation and took me out of a medical dorm."  Initial Brief at 45.  These allegations are sufficient to state a retaliation claim.

Accordingly, the District Court erred in dismissing Christmas' Amended Complaint, and the dismissal must be reversed.

## ARGUMENT

**I.  Christmas Adequately Alleged a First Amendment Free Speech Claim and Sixth Amendment Claim.**

Christmas is entitled to "confidence in the confidentiality of his communications." *Mitchell v. Duval Cty. Jail*, 10 F.4th 1226, 1231 (11th Cir. 2021); *Al Amin v. Smith*, 511 F.3d 1320, 1334 (11th Cir. 2008).  Christmas lost that confidence, thereby chilling his speech, when Polk County officials scanned his legal mail onto a centralized database.[1]  ECF No. 23-1 at 36.  Adding insult to injury, the system is prone to error, and Christmas is forced to access this mail from a central kiosk where guards are standing by and could view his communications.  ECF No. 30-1 at 5 (mail was uploaded to the wrong account or legal mail was treated as regular mail); ECF No. 30-1 at 153 (alleging that Christmas "[knew] other

---

[1]  Although neither this Court or other Circuit Courts have addressed the constitutionality of scanning legal mail, the Third Circuit in *Rancourt Little Mt. Woodell v. Wetzel*, No. 20-3235, 2022 U.S. App. LEXIS 33531, at \*5 n.5 (3d Cir. Dec. 6, 2022), acknowledged that in the lower court proceedings, when a prisoner raised a claim about scanning legal mail, the Pennsylvania Department of Corrections changed its policy and settled the damages claims on the issue.

inmates…standing behind [him] in line for the kiosk [could] read [his] mail and so [could] the jail [because] it's th[eir] computers.").[2]

Likewise, Christmas has a Sixth Amendment right to confer privately with counsel.  Christmas alleges that he did not feel secure in his legal correspondence based on the jail staff's ability to open legal mail outside of Christmas' presence, thus threatening his right to confer with counsel.  ECF No. 23-1 at 36–37.  The Ninth Circuit has explained that the First Amendment protections ensuring legal mail is only opened in an inmate's presence also extends to an inmate's Sixth Amendment right to communicate with their attorney confidentially.  *Magiaracina v. Penzone*, 849 F.3d 1191, 1196 (9th Cir. 2017);  *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) ( "[O]pening properly marked legal mail alone, without doing more, implicates both the First and Sixth Amendments because of the potential for a 'chilling effect.'").  The Eleventh Circuit has also contemplated this right.  *See, e.g*., *Ford v. Hunter*, 534 F. App'x 821, 825 (11th Cir. 2013).

Christmas' First and Sixth Amendment rights prevail.  While courts give deference to the jail in managing its security, Defendants' reliance on the deference

---

[2] Contrary to Defendants' assertions, Answer Brief at 7, the court may consider the allegations in Christmas' Objections to the Magistrate's Report and Recommendations.  The Eleventh Circuit has found that in *pro se* filings, at the dismissal stage, the Court "may consider facts asserted by the plaintiff in objections to the magistrate judge's report and recommendation." *Boxer v. Harris*, 437 F.3d 1107, 1112 n.3 (11th Cir. 2006); *Wooden v. Armenteros*, 756 F. App'x 951, 953 (11th Cir. 2018).

afforded jail staff, Answer Brief at 9–10, is unavailing when no inference can be made—nor was one provided—regarding the legitimate penological reasons for scanning legal mail and maintaining such communications on a database *after* it is opened in the presence of the inmate. *Mangiaracina*, 849 F.3d at 1197 ("This deference, however, only comes into play when the facility offers a legitimate justification for the challenged practice.").  To be clear, neither Defendants now nor the District Court (which at first permitted this claim to proceed past screening, ECF No. 21 at 16), made specific assertions nor submitted any specific reasons why scanning legal mail is necessary. *Cf. Saleem v. Evans*, 866 F.2d 1313, 1316 (11th Cir. 1989) (holding that in reviewing the adequacy of a First Amendment claim, the Court ordinarily may not assume that prison officials have an interest that is "legitimate, compelling and substantial without any allegations or evidence to support such a finding"); *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010) (finding that because defendant did not give a reason for restricting access to mail, plaintiff stated plausible violations of his First Amendment rights).

Defendants fail to acknowledge that deference given to jail administrators is tempered by inmates' constitutional rights. *See Pesci v. Budz*, 935 F.3d 1159, 1167 (11th Cir. 2019) ("At the same time, deference to the professional judgment of the facility administration is not tantamount to carte blanche permission to deny the fundamental rights of free speech and free expression.  The *Turner* standard is a

6

deferential one, but it is not toothless.") (internal citations omitted).  And, absent a penological justification for the conduct at issue, Defendants deference must yield to Christmas' constitutional rights.

Moreover, and contrary to Defendants' contention, Christmas was not required to allege that jail staff actually read Christmas' legal mail or that mail from his criminal defense attorney was censored.  Answer Brief at 9–11.  Indeed, it was sufficient that Christmas alleged a policy that interfered with the confidence he had in the confidentiality of all of his legal communications.[3]  The Ninth Circuit in *Magiaracina* considered exactly the scenario Christmas complains of here, where the inmate alleges the facility's ability to, and practice of, opening legal mail outside of an inmate's presence, but has not directly alleged that the legal mail was read by prison staff.  849 3d. at 1196.  As the Ninth Circuit explained:

> Mangiaracina does not allege that jail officials ever *read* his mail. But indeed, how could he? If the practice of opening legal mail in the presence of the prisoner is designed to prevent correctional officers from reading it, then the natural corollary is that a prisoner whose mail is opened outside his presence has no way of knowing whether it had been (permissibly) inspected or (impermissibly) read. In other words, Mangiaracina could not in good faith have alleged that jail employees had read his mail, since he had no basis for knowing what had happened to his mail prior to delivery.

---

[3] Although Christmas attaches a copy of scanned court correspondence, which Defendants argue does not warrant protection akin to other legal mail, Answer Brief at 11, Christmas has not alleged that Defendants scanned this singular piece of mail. Rather, Christmas alleged a policy, which has not been disputed, whereby all legal mail is scanned. ECF No. 23-1 at 36.

*Id.* at 1197 (citing Scott Dodson, *New Pleading, New Discovery*, 109 Mich. L. Rev. 53, 54 (2010) ("[P]laintiffs proceeding with claims that depend upon facts exclusively in the hands (or minds) of defendants and third parties may find themselves in a Catch-22: plaintiff needs those facts to plead her claim properly and survive a 'Twiqbal' motion to dismiss, but she may not be able to discover those facts without first surviving the motion to dismiss.")). The same holds true here. Christmas could not have alleged whether the jail employees read the electronic version of his legal mail (stored on both the memory chip and available through the kiosk) because he had no basis to know what happened to his mail after it was scanned and uploaded. *See id.*

Further, Christmas properly named Nabors and Hill as Defendants, and maintains an official capacity claim against Nabors and individual capacity claims against both Nabors and Hill. Yet, the District Court did not address the First and Sixth Amendment official capacity claim against Nabors. ECF No. 27 at 13-14. Rather, the District Court focused its analysis on Nabors' and Hill's role in the "two-in-two-out" policy, which Christmas does not complain of on appeal. ECF No. 27 at 5–7. In fact, in its analysis of Christmas' legal mail claim, the District Court did not dispute Christmas' allegations that the legal mail policy was an official policy. At the District Court, Christmas included a copy of a document from Polk County Jail with instructions to set up a "legal mail account" and access legal mail from the

"kiosk." ECF No. 30-1 at 153. This official document, coupled with allegations that Nabors, as a supervisor, was the mail policy's principal architect and was instrumental in its adoption and execution, are sufficient to state an official capacity claim. ECF No. 23-1 at 36; *Mathews v. Crosby*, 480 F.3d 1265, 1275 (11th Cir. 2007) (reviewing facts in the light most favorable to the plaintiff to determine whether prison official established a policy).

With regard to the individual capacity claims, Christmas alleges both Hill and Nabors individually took Christmas' legal mail, made him open it, and scanned his mail to a memory chip. ECF No. 23-1 at 36. Thus, Christmas also alleged that both Nabors and Hill were individually responsible for violating his First Amendment rights. *See Al-Amin*, 511 F.3d at 1336 (finding individual liability where defendants opened (but did not read) legal mail outside of the presence of the plaintiff). In *Mitchell*, the Eleventh Circuit found a legal mail claim was properly pled against prison sergeants who "instructed staff" regarding legal mail and "implemented an order" regarding legal mail. *Mitchell*, 10 F.4th at 1231. Here, Christmas' allegations that Nabors was the architect of the policy and instrumental in its adoption and execution, in addition to the allegations that Nabors and Hill enforced the policy, support the conclusion that Nabors and Hill were proper parties in this action.

## II.    The District Court Erred in Dismissing Christmas' Fourteenth Amendment Due Process Claim.

Defendants contend that Christmas cannot both receive medical care and have access to recreation. Answer Brief at 16. And by extension, Defendants assume that Christmas cannot complain about one if he is being provided another. *See, e.g., id*. By asking for both medical care and access to recreation, Defendants assert that Christmas requested to fundamentally alter the jail's services. *Id.* However, the subject of the Court's inquiry is whether the jail is meeting constitutionally minimal standards, not whether providing the constitutionally minimal standard would require the jail to make adjustments to its services. Importantly, Christmas was a pre-trial inmate, not a convicted inmate. *Cf.* Answer Brief at 13. Thus, the operative question is whether a condition of pretrial detention imposed by Defendants at Polk County Jail amounts to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Denial of all exercise does.

Christmas' Fourteenth Amendment claim focused on Polk's denial of all recreation. Namely, Christmas alleged that, while housed in the medical unit for approximately two years, he was denied all outdoor *and* indoor exercise. *See* ECF No. 23-1 at 21 ("The plaintiff suffered a total lack of exercise and movement was denied and [his] muscles [were] allowed to atrophy"); *id.* at 8 ("I have sent several grievances in the past to have recreation and I would like to know why we can't have rec[reation] in s-med[.] I've been here 2 years and I need fresh air and sunlight. . .

10

We need fresh air and sunlight along with a little exercise."). Christmas also alleged there was no space to exercise in the medical unit. ECF 23-1 at 9.

For this reason, Defendants' misstate the nature of Christmas' recreation claim: Christmas did not merely complain about lack of outdoor recreation (although a little sunshine might have gone a long way); rather, Christmas takes issue with the lack of *all* recreation—outdoor and indoor. Christmas' claim raises constitutionally (and humanely) inadequate conditions. Contrary to Defendants' dismissive assertion that Christmas was trying to have it both ways by obtaining medical attention to treat a gunshot wound to his stomach while simultaneously having the opportunity to engage in recreation, Christmas was doctor-ordered to engage in physical activity. ECF No. 30-1 at 27. However, *for two years* he was not permitted to do so, causing his muscles to atrophy. *See Williams-Bey v. Carpenter*, No. 14-00490-CG-C, 2015 U.S. Dist. LEXIS 99266, at *31 (S.D. Ala. June 30, 2015) (citing *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (finding a lack of exercise will be found to be a constitutional violation if an inmate's health is threatened or muscles are allowed to atrophy)).

As Christmas alleged, the denial of exercise for inmates housed in the medical dorm was not for any legitimate reason, ECF No. 23-1 at 8 ("this is for all inmates in s-med"), *id.* at 22 (alleging that Defendants denied plaintiff recreation for two years while in a medical dorm called s-med for no legitimate reason). Nor is any

11

legitimate penological reason for this denial of exercise evident from the record. Whether Defendants may ultimately be able to present a penological justification for their denial of Christmas' access to exercise is "a question for another day." *Jackson v. Ward*, 2022 U.S. Dist. LEXIS 51028, at *8 (S.D. Ga. March 1, 2022) (finding plaintiff's allegations of complete denial of outdoor recreation due to chronic overcrowding, understaffing and lack of security sufficient to survive screening). Consequently, Christmas' Fourteenth Amendment claim was adequately pled and dismissal of the claim must be reversed.

## III.  The District Court Erred in Dismissing Christmas' Americans with Disabilities Act Claim.

Christmas alleged that he was a qualified person with a disability and that he was excluded from the Polk programs because of his disability.  Specifically, Christmas alleged that he has mobility issues, which require the use of a cane.  ECF Nos. 23-1 at 34; 30-1 at 110.  Defendants ignore these allegations and argument (as well as the case law cited in support) and instead contend that Christmas' claim was properly dismissed because he did not use the word "disability" in his filings. Answer Brief at 15.  Defendants' argument is unsupported.  Christmas' allegations of severe mobility impairment, which constitutes a disability, are sufficient to state a disability even if the word "disability" does not appear in Christmas' pleadings. *See Torres v. Miami-Dade Cty.*, 734 F. App'x 688, 689 (11th Cir. 2018) (noting that "federal  courts  must  sometimes  look beyond  the labels used in a pro se party's

complaint and focus on the content and substance of the allegations"). As a *pro se* plaintiff, Christmas' filings are entitled to liberal construction, meaning that federal courts must look beyond the labels used in a *pro se* party's complaint and focus on the content and substance of the allegations. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997) ("A complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief *on any possible theory*.") (emphasis added). Properly construing the legal bases for claims, especially in the *pro se* context, is an obligation that must be undertaken by the District Court. *Haines v. Kerner*, 404 U.S. 519 (1972). Yet, the District Court did not do so here.

Defendants also fail to address Christmas' claim that he was denied access to jail programming because of his disability. Instead, Defendants rely on their strawman argument that Christmas could not have both access to medical treatment and access to recreation simultaneously. In so doing, Defendants fail to address the issue at hand: whether Christmas was excluded from participation in, or denied the benefits of, a public entity's services, programs, or activities, or was otherwise discriminated against by a public entity by reason of his disability. *See Bircoll*, 480 F.3d at 1083. The allegations provide a sufficient basis to conclude that Christmas pled an Americans with Disabilities Act claim. Simply put, Polk failed to make the constitutionally-necessary arrangements to enable a disabled inmate, such as

Christmas, whom Defendant Nabors knew was disabled, "to participate in outdoor recreation time to the same extent as able-bodied inmates." *See Fredricks v. City of N.Y.*, 2013 U.S. Dist. LEXIS 31633, at *13 (S.D.N.Y. Mar. 4, 2013) (finding plaintiff stated an ADA claim when he alleged his outdoor recreation was often denied because of the facility's failure to make accommodations for his cane).

## IV.    The District Court Erred in Dismissing Christmas' Retaliation Claim.

Again, Christmas did not have to use the label of "retaliation" to state a retaliation claim.  Rather, the facts here required the District Court to construe a retaliation claim.  *Torres*, 734 F. App'x  at 689.  Christmas alleged that Nabors and Hill retaliated against him by prematurely moving him from the medical dorm to open population and stripping him of his medically necessary cane because he filed grievances requesting access to recreation. ECF No. 23-1 at 32; ECF No. 30-1 at 107.    Specifically, Christmas alleged that Defendants moved him to open population—although he was not in a condition to leave the medical unit (he was wearing a colostomy bag and still had significant injury to his stomach as a result of the gunshot wound)—and stripped him of his cane all because he "ask[ed] for recreation." *Id.* at 32; ECF No. 30-1 at 109, 110 ("Lt. Nabors took my ca[ne] and put me in more pain just because I ask for recreation and took me out of a medical

dorm.").[4]  These allegations were sufficient for the District Court to construe a

retaliation claim that could proceed past screening.

## V.  The District Court Erred in Dismissing Christmas' Deliberate Indifference Claim When Officials Deprived Christmas Necessary Medical Care.

Again, Defendants set up a false premise and build their argument on that

flimsy foundation.  Contrary to Defendants' repeated suggestions, Christmas never

asked to be housed in open population.  Answer Brief at 13; 18.  Rather, Christmas

asked for recreation.  That recreation is only accessible to those in open population

at Polk County Jail does not mean that by asking for recreation, Christmas asked to

be in open population or asserted that he no longer had a medical need.  Instead,

Christmas only asked for access to exercise while he was housed in the medical

dorm.  This simple and straightforward request cannot be equated to telling the

facility he no longer had a medical need—asking for recreation in no way "suggest[s]

he is ready to be placed in open population with recreation" like Defendants contend.

*Id.* at 18–19.

When analyzing whether Defendants were deliberately indifferent to

Christmas' medical needs, the focus of the inquiry should be on just that, not the

---

[4] Tellingly, Defendants do not dispute the fact that Christmas was moved from medical prematurely.  Instead, Defendants assert they are not at fault because Christmas filed grievances for access to recreation and the outside, and at Polk, you cannot have both.  Therefore, because he asked for recreation, he no longer gets necessary medical care.

housing parameters set up by Polk County Jail and whether they easily accommodate Christmas' serious health concerns. And when not distracted by Defendants' failing arguments about the false dichotomy of its own creation where those in medical do not get as much access as those without, Christmas states a deliberate indifference claim. Accordingly, the District Court's decision merits reversal.

## <u>CONCLUSION</u>

For these reasons, the District Court erred in dismissing Christmas' Amended Complaint at the screening stage, and that dismissal must be reversed.

Respectfully submitted,

BAKER & McKENZIE LLP
*Pro Bono Counsel for Rickey Lee Christmas*
Sabadell Financial Center
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8900
Facsimile: (305) 789-8953


By: /s/ Jodi A. Avila
   Jodi A. Avila
   Florida Bar No. 102787
   jodi.avila@bakermckenzie.com

   Adrienne L. Harreveld
   Florida Bar No. 1035946
   adrienne.harreveld@bakermckenzie.com

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7). According to the Word program on which it was written, the numbered pages of this brief contain fewer than 4,589 words.

By: /s/ Jodi A. Avila
      Jodi A. Avila

**CERTIFICATE OF SERVICE**

I CERTIFY that on February 8, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, and entered the required information on the web-based system on the Court's website.  I also certify that the foregoing document is being served this day via CM/ECF on  Counsel for Defendants.

By: /s/ Jodi A. Avila_____
　　　Jodi A. Avila