[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14230

_____

RICKEY LEE CHRISTMAS,

Plaintiff-Appellant,

*versus*

LIEUTENANT J. NABORS,
Individual and Official capacity,
SERGEANT MARSHA HILL,
Individual and Official capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

2                    Opinion of the Court                    21-14230

D.C. Docket No. 8:20-cv-00259-TPB-AAS

_____

Before ROSENBAUM, BRANCH, and BRASHER, Circuit Judges.

ROSENBAUM, Circuit Judge:

Henry L. Stimson said, "Gentlemen don't read each other's mail." Henry L. Stimson & McGeorge Bundy, *On Active Service in Peace and War* 188 (1947).[1] He had a point. After all, no one likes it when someone else reads their mail. And as it turns out, even the possibility that a jail official could read a prisoner's legal mail can violate the prisoner's First Amendment rights.

This case is about that possibility at the Polk County Jail. When Plaintiff-Appellant Rickey Christmas was a pretrial detainee at that Jail, the Jail required him to scan his legal mail into a computer that contained a memory chip. Though Christmas does not

---

[1] Henry L. Stimson is known for many things. Among others, he served twice as the United States Secretary of War: first, from 1911 to 1913 in President William Howard Taft's administration, and then again more than 25 years later, in President Franklin Delano Roosevelt's administration, from 1940 through September 1945. *Henry L. Stimson (1911-1913)*, U. VA. MILLER CTR., https://perma.cc/X6ZT-MTJJ. That second term included the entirety of World War II. Stimson also did a stint as Secretary of State, from 1929 to 1933, in President Herbert Hoover's administration. *Id.* He is remembered in that role for many things, including his articulation of the Stimson Doctrine, which refuses to recognize any situation, treaty, or agreement procured by the unlawful use of armed force. David Turns, *The Stimson Doctrine of None-Recognition: Its Historical Genesis and Influence on Contemporary International Law*, 2 Chinese J. Int'l L. 106–07 (2003).

know whether anyone other than he read his mail, he worried that the Jail could and may have, since it had access to the computer into which he had scanned his mail.

So Christmas sued Polk County and two employees who worked at the Jail.  He alleged, among other things, that the Jail and its employees interfered with his right to communicate freely and confidentially with his attorneys by forcing him to scan his legal mail into a computer with a memory chip.  Because that claim is plausible on its face, we hold that the district court erred in dismissing it.  Otherwise, we affirm the district court's dismissal of Christmas's complaint.

## I.

Christmas was once a pre-trial detainee at the Polk County Jail.[2]  When he arrived there, he was still recovering from a gunshot wound to his stomach.  For that reason, the Jail initially placed him in a medical unit.

During his time at the Polk County Jail, Christmas filed several grievances.  After spending two years in the medical unit, he complained that he lacked access to outdoor recreation.  Lieutenant J. Nabors, an employee at the Polk County Jail, responded by

---

[2] This case arrives here after the district court screened and dismissed Christmas's amended complaint under 28 U.S.C. § 1915A(b)(1) for failing "to state a claim upon which relief may be granted."  So for purposes of review, we accept the factual allegations in his complaint as true.  *Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019); *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1043 (11th Cir. 2019).

telling Christmas that he would "be medically eligible to go to out-side recreation" once he relocated to the prison's general popula-tion.  Christmas twice repeated his request for outdoor recreation.  Each time Nabors told Christmas that he was not eligible for out-door recreation until the Jail's medical staff cleared him to relocate into the Jail's general population.

When Christmas was finally relocated from the medical dorm to the Jail's general population, he accused Nabors of pun-ishing him.  But Nabors allegedly denied that accusation and told Christmas that he no longer "qualif[ied] for medical housing" and that he was "housed appropriately" based on his medical classifica-tion.

Separate from his grievances and requests for outdoor rec-reation, Christmas filed a grievance about the Jail's policy of copy-ing his legal mail using a machine with a memory chip.  Sometimes, the Jail provided Christmas with only a copy of his legal mail; other times, Nabors and Sergeant Marsha Hill, who also worked at the Jail, uploaded the mail to a central database, which Christmas could then access via a "computer called a kiosk."

Based on these claims, Christmas filed a pro se complaint in the district court, invoking 42 U.S.C. § 1983 and asserting that Lieu-tenant Nabors and Sergeant Hill violated his constitutional rights in several ways.  In particular, he alleged that Lieutenant Nabors violated his First and Sixth Amendment rights by opening and scan-ning his mail into a computer.  As a result, Christmas complained, Lieutenant Nabors and other employees at the Jail were able to

read the contents of Christmas's mail when Christmas wasn't around.    According to Christmas, Lieutenant Nabors handled Christmas's legal mail—including discovery and anything his attorneys sent him—the same way.

Upon Christmas's filing of his lawsuit, the district court entered an order screening Christmas's complaint under 28 U.S.C. § 1915A.  Construing Christmas's legal-mail claim "under either or both the First and Sixth Amendments," the district court found Christmas's "allegations sufficient to proceed to service of process on Defendant Nabors."  As for Christmas's remaining claims, the district court dismissed them without prejudice and granted Christmas leave to file an amended complaint.

So Christmas filed an amended complaint.  In it, he reiterated his legal-mail claim and added new factual allegations.  The district court referred Christmas's amended complaint to the magistrate judge, who recommended dismissing all Christmas's claims, including his legal-mail claim, under 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

Although Christmas filed extensive objections to the magistrate judge's recommendation, the district court overruled them and dismissed his complaint.  In so doing, the district court did not explain why it concluded that Christmas's legal-mail claim, which the court previously had found sufficient to proceed, warranted dismissal.

## II.

When a district court *sua sponte* dismisses a complaint for failure to state a claim under 28 U.S.C. § 1915A(b)(1), our review is *de novo*. *Leal v. Ga. Dep't of Corrs.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001). In conducting that *de novo* review, we apply the same standard as when a district court dismisses a complaint under Federal Rule of Civil Procedure 12(b)(6). *Henley*, 945 F.3d at 1331. We therefore view the allegations in the complaint as true and draw all reasonable inferences from it in the plaintiff's favor. *Royal Caribbean Cruises*, 931 F.3d at 1043.

In addition, because Christmas drafted his own complaint, we hold his pleadings to "a less stringent standard" than we would if an attorney drafted his pleadings. *Leal*, 254 F.3d at 1280 (quoting *Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam)).

## III.

Christmas asks us to find that the district court erred in six ways when it dismissed his complaint. We think the district court got it mostly right. But we agree with Christmas that the district court erred by dismissing his legal-mail claim.

### A. Christmas stated a claim that Defendants violated his First Amendment rights.

Because Christmas alleged that Lieutenant Nabors and Sergeant Hill could access his legal mail while outside his presence, we first hold that Christmas stated a claim under the First

Amendment.  We also hold that Christmas stated a First Amendment claim against Nabors in his official capacity and against both Nabors and Hill in their individual capacities.

> 1. <u>Christmas alleged sufficient facts to allow for the reasonable inference that the Jail's mail-scanning policy infringed on his free-speech rights.</u>

"A simple rule has governed prison mail procedures in our Circuit for nearly 50 years: a prison official may not open an inmate's properly marked legal mail outside of his presence." *Mitchell v. Peoples*, 10 F.4th 1226, 1228 (11th Cir. 2021).[3]  If a prison official does so, that official violates the inmate's First Amendment "right to free speech."  *Id*. at 1230 (citing *Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008)).  Of course, the legal-mail rule anticipates that a prison official may open a prisoner's mail in the prisoner's presence—but only for the purpose of permitting that official to check the mail for contraband, not for allowing the official to read the mail.  *Id*.  This longstanding rule strikes a balance that enables inmates to "trust that their legal communications" remain "confidential," while still permitting "jail officials" to "preserve security." *Id*. (citing *Taylor v. Sterrett*, 532 F.2d 462, 477 (5th Cir. 1976)).[4]

---

[3] This rule applies as much to pretrial detainees (like Christmas) as it does to convicted prisoners.  *Id*.  at 1229 (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).

[4] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding on this Court.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Lieutenant Nabors and Sergeant Hill urge us to affirm the district court's dismissal of Christmas's legal-mail claim because he failed to allege that they "actually read his legal mail." But that's irrelevant here.

Our cases applying the legal-mail rule hinge on whether a prison official's conduct "sufficiently chills, inhibits, or interferes with" an inmate's "ability to speak, protest, and complain openly to his attorney so as to infringe his right to free speech." *Id.* at 1230–31 (quoting *Al-Amin*, 511 F.3d at 1334). Although Christmas did not allege that Lieutenant Nabors and Sergeant Hill opened his mail outside of his presence, he did allege that they *could* access his legal mail outside of his presence in the future. In particular, he asserted that Nabors and Hill made him open his legal mail in their presence and scan it into a computer that allegedly contains "a memory chip." That kind of technology stores a prisoner's mail and, at least on the allegations in Christmas's complaint, enables jail officials to access a prisoner's mail outside his presence. So we can reasonably infer that Nabors and Hill *could* read Christmas's legal mail outside his presence.[5]

And it's easy to understand why that kind of ability could "chill, inhibit, or interfere with" a prisoner's "ability to speak, protest, and complain openly to his attorney so as to infringe his right

---

[5] Our plausibility determination here is limited to instances when a prisoner alleges that his legal mail was scanned and uploaded onto a "memory chip" or other electronic storage medium that enables prison employees to later access that mail outside the prisoner's presence.

to free speech." *Mitchell*, 10 F.4th at 1230–31 (quoting *Al-Amin*, 511 F.3d at 1334). For that reason, Christmas plausibly alleged a First Amendment claim.

> ### 2. Christmas stated a First Amendment claim against Nabors in his official capacity.

By suing Lieutenant Nabors in his official capacity as the Lieutenant of the Polk County Jail, Christmas effectively sued Polk County. *E.g.*, *Ireland v. Prummell*, 53 F.4th 1274, 1288 (11th Cir. 2022).[6] "The 'touchstone of [a] § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of civil rights protected by the Constitution.'" *Hoefling v. City of Miami*, 811 F.3d 1271, 1280 (11th Cir. 2016) (alteration in original) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). A plaintiff can establish that an official policy caused the deprivation of his constitutional rights by identifying "a widespread practice that, although not authorized by written or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Baxter v. Roberts*, 54 F.4th 1241, 1270 (11th Cir. 2022) (quoting *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001)).

As we've noted, Christmas alleged that Jail officials scan all the incoming legal mail and upload it to "a computer called a kiosk." That computer allegedly has "a memory chip" that stores

---

[6] Christmas's complaint also asserted a claim against Sergeant Hill in her official capacity. But Christmas has abandoned that claim on appeal.

copies of inmates' legal mail. We think these allegations establish that an official policy caused Christmas's alleged constitutional deprivation. After all, it's hard to imagine why the Jail would even have this technology if not for an official policy.

Lieutenant Nabors contends that Christmas failed to plausibly allege that Lieutenant Nabors "had decision-making authority for the jail." But Christmas need not assert that Lieutenant Nabors had final decision-making authority. Indeed, "identifying and proving that a final policymaker acted on behalf of a municipality is 'an evidentiary standard, and not a pleading requirement." *Hoefling*, 811 F.3d at 1280 (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002)). Christmas needed only to "allege a policy, practice, or custom of the [County] which caused the [violation of his First Amendment rights]." *Id*. And as we've explained, Christmas cleared that bar.

> 3.  Christmas stated First Amendment claims against Nabors and Hill in their individual capacities.

Christmas also asserted legal-mail claims against Lieutenant Nabors and Sergeant Hill in their individual capacities. But the district court dismissed those claims, reasoning that Christmas's allegations connect neither Lieutenant Nabors nor Sergeant Hill to his asserted constitutional deprivation. We disagree.

A supervisor may be liable for the unconstitutional acts of his subordinates when he personally participates in those acts or when a causal connection exists between his actions and the constitutional deprivation. *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th

Cir. 2008) (citation omitted).  A causal connection exists, in turn, when the "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  *Id.*

Here, Christmas alleged not only that Lieutenant Nabors and Sergeant Hill failed to stop their subordinates from acting unlawfully, but also that Nabors and Hill directed their subordinates to act unlawfully.  In fact, Christmas alleged that Lieutenant Nabors and Sergeant Hill continued to direct their subordinates to enforce the Jail's mail-scanning policy even after Christmas filed grievances and complained about the policy's illegality.  As a result, Christmas has stated a First Amendment legal-mail claim against Nabors and Hill in their personal capacities.  *See Mitchell*, 10 F.4th at 1231 (holding that a prisoner stated a claim under the legal mail rule against a prison's mailroom supervisor when the latter "apparently knew about the illegal conduct after [the prisoner] filed grievances, but still failed to stop that" conduct from continuing).[7]

---

[7] As we've mentioned, Christmas's legal-mail claim is at the § 1915A stage, where we must accept the facts as he has alleged them and draw all reasonable inferences in his favor.  *Henley*, 945 F.3d at 1331; *Royal Caribbean Cruises*, 931 F.3d at 1043.  On top of that, Christmas filed a pro se complaint, so we hold his pleadings to "a less stringent standard."  *Leal*, 254 F.3d at 1280.  Of course, in a review of an order dismissing claims at the § 1915A stage, our ruling that a plaintiff has stated a plausible claim does not purport to opine on the ultimate merits of the claim.  Should the actual facts turn out to differ from the facts we've assumed here, obviously, that could bear on the outcome of Christmas's legal-mail claim.

**B. We affirm the district court's dismissal of Christmas's claim under the Due Process Clause.**

Christmas also argues that the district court erred by dismissing his claim that Lieutenant Nabors violated his rights under the Due Process Clause when Nabors denied Christmas access to outdoor recreation for two years. We cannot agree that the district court erred because Christmas failed to address—and thus conceded—an element necessary to prevail on his Due Process Claim.

We have held that "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care[,] the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985); *see also Ireland*, 53 F.4th at 1287 n.4 (noting that "decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees" (quoting *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996)).

The Eighth Amendment's standard requires a plaintiff to satisfy *both* objective *and* subjective components. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 834 (1970); *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). So a prisoner claiming that the conditions of his confinement violate the Eighth Amendment must first show that the condition objectively exposes the prisoner to "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the prisoner can satisfy that objective inquiry, he must then satisfy a

subjective one by showing that the prison official who imposed the challenged condition had a "sufficiently culpable state of mind." *Id.* (quoting *Wilson*, 501 U.S. at 297).

Because Christmas was a pretrial detainee, and because his claim involves the deprivation of a "basic necessity" like access to recreational activity, he must satisfy the Eighth Amendment's objective and subjective standards to prevail on his claim under the Fourteenth Amendment's Due Process Clause. And that's where his problem arises, as he argues only that the conditions of his confinement were objectively unreasonable.

Invoking our decision in *Bass v. Perrin*, 170 F.3d 1312 (11th Cir. 1999), Christmas asserts that the "complete denial of outdoor exercise may" violate the Constitution when there's no "penological justification" for that condition. *Id.* at 1316–17 (citation omitted).

That argument misapprehends *Bass*, though. Even if a prisoner alleges prison officials completely denied a prisoner access to outdoor exercise without any penological justification (the objective inquiry), *Bass* still requires the prisoner to assert that prison officials acted with deliberate indifference to a serious risk of harm to the prisoner (the subjective inquiry).

*Bass* involved two prisoners who claimed that prison officials violated their Eighth Amendment rights by "complete[ly]" denying them access to "outdoor exercise," *id.* at 1317. We rejected those claims because the plaintiffs satisfied neither the objective nor subjective inquiries.

The prisoners in *Bass* failed to satisfy the objective inquiry because the prison officials denied them access to outdoor exercise to enhance "the safety and security of the prison." *Id*. at 1316. Those prisoners received sentences for "violent crimes": one "for robbery, kidnapping, and armed burglary;" and the other "for armed robbery." *Id*. Worse still, those prisoners "continued to engage in violent behavior" after being incarcerated. *Id*. One prisoner stabbed another prisoner. *Id*. And during their allotted time for outdoor exercise, both prisoners "scaled a fence, commandeered a dump truck (by ejecting the driver at knifepoint), and drove through the perimeter fence in an attempt to escape." *Id*. at 1315. As a result, prison officials suspended those inmates' access to "outdoor exercise," *id*. Although we acknowledged that the complete denial of outdoor exercise involved the "infliction of pain," we concluded that the pain inflicted was not "totally without penological justification." *Id*. at 1316 (quoting *Gregg*, 428 U.S. at 183). "On the contrary," we continued, "it would be hard to imagine a situation in which two persons had shown a greater threat to the safety and security of the prison." *Id*.

The prisoners in *Bass* also failed to satisfy the subjective element because the prison officials were not deliberately indifferent "to a substantial risk of serious harm to" the prisoners. *Id*. at 1317 (quoting *Farmer*, 511 U.S. at 836). We noted that the record was "filled with evidence indicating that prison officials were very concerned" that the plaintiff-prisoners might harm other prisoners if the plaintiff-prisoners were permitted to exercise outdoors. *Id*. We also noted that the plaintiffs received "daily" medical attention and

"weekly cell-front psychological evaluations." *Id*. We therefore concluded that the prison officials did not act with deliberate indifference. *Id*.

*Bass* is thus consistent with our Eighth Amendment cases that require a plaintiff to satisfy both objective and subjective inquiries. And as we've noted, that's problematic for Christmas because he argues only that Lieutenant Nabors denied him access to outdoor recreation without "any legitimate reason." For our purposes at the § 1915A stage, we can assume without deciding that Christmas is right—that is, we can assume that Lieutenant Nabors denied him access to outdoor recreation without any legitimate reason. *See, e.g.*, *Spain v. Procunier*, 600 F.2d 189, 200 (9th Cir. 1979) (Kennedy, J.) (holding that neither security, cost, nor inconvenience are "adequate justification[s] for failing to provide resources for outdoor exercise during [inmates'] long period of confinement").

But even if that's so, that satisfies only the objective inquiry. And Christmas's briefs altogether ignore the subjective prong, which, again, requires a showing that the prison official who imposed the challenged condition had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). Nor can we address that prong for him; "the law is by now well settled in this Circuit that a legal . . . argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004); *see also, e.g.*, *U.S. v. Nealy*, 232 F.3d 825, 830

(11th Cir. 2000) ("Parties must submit all issues on appeal in their initial briefs.").

Without pleading facts that we can reasonably infer establish that Lieutenant Nabors intended to punish him, Christmas cannot show that the district court erred in dismissing his claim under the Due Process Clause. We therefore affirm the district court's dismissal of Christmas's claim under the Due Process Clause.

**C. The district court did not err by failing to construe Christmas's complaint as stating claims under either the Americans with Disabilities Act or the Rehabilitation Act.**

Christmas also argues that the district court erred by failing to construe his complaint as stating claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. In his view, his complaint made such claims by alleging that Lieutenant Nabors, while acting in his official capacity, implemented a policy that denied recreation time to detainees in the medical unit, including those with disabilities. We cannot agree with Christmas, though, because he again failed to address an element necessary to prevail on his discrimination claim.

Title II of the ADA prohibits public entities from discriminating against qualified individuals with disabilities. *See* 42 U.S.C. § 12132; *see also Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1081 (11th Cir. 2007) (observing that this prohibition applies to prisons and that a disabled prisoner can state a claim under the ADA if a state prison denies that prisoner access to an activity because of his

disability). Section 504 of the Rehabilitation Act contains an analogous prohibition. *See* 29 U.S.C. § 794. So we assess discrimination claims under both statutes using "the same standards," *J.S., III ex rel. J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017); *see also Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000) ("Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice versa.").

To prevail on a claim under either Title II or Section 504, a plaintiff must satisfy three elements:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Houston Cnty. Bd. of Educ.*, 877 F.3d at 985 (quoting *Bircoll*, 480 F.3d at 1083). Besides these requirements, because Christmas seeks damages, he "must clear an additional hurdle: he must prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of deliberate indifference." *Ingram v. Kubik*, 30 F.4th 1241, 1257 (11th Cir. 2022) (quoting *Silberman v. Mia. Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019)). Put differently, Christmas must show that the Jail had "actual knowledge of discrimination in the entity's programs" and failed to adequately respond. *Id.* at 1250 (quoting *Silberman*, 927 F.3d at 1134).

That additional hurdle proves fatal here because Christmas contends neither that the Jail knew about Lieutenant Nabors's alleged discrimination nor that it failed to respond adequately. As a result, we cannot say that the district court erred when it did not construe Christmas's complaint as stating claims under the ADA and the Rehabilitation Act.

### D. The district court did not err by failing to construe Christmas's complaint as alleging a First Amendment retaliation claim.

Christmas also argues that the district court erred by failing to construe his complaint as stating a First Amendment retaliation claim against Lieutenant Nabors and Sergeant Hill. In Christmas's view, he stated such a claim by alleging that Nabors and Hill stripped him of his "medically necessary cane" and prematurely moved him from the Jail's medical dorm into its general population as retaliation for his filing grievances and asking for access to outdoor recreation.

Prison officials violate a prisoner's "First Amendment rights to free speech and to petition the government" by punishing that prisoner "for filing a grievance concerning the conditions of his imprisonment." *Yates*, 535 F.3d at 1321 (quoting *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006)). To prevail on such a claim, a plaintiff must satisfy three elements: "first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the

adverse effect on speech." *Id.* (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).

Christmas's allegations satisfy the first element because he engaged in protected speech when he filed grievances and asked for access to outdoor recreation. *E.g.*, *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (observing that an inmate exercises "his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement").

We can also assume that Christmas satisfies the second element, which turns on whether the discipline he received for engaging in protected speech "would likely deter a person of ordinary firmness from engaging in" that speech. *Brannon v. Finkelstein*, 754 F.3d 1269, 1274 (11th Cir. 2014).

This brings us to the causal-connection requirement. To establish a causal connection between the retaliatory actions and the adverse effect on speech, Christmas must show that Lieutenant Nabors and Sergeant Hill "were subjectively motivated to discipline [Christmas] because [he] complained of some of the conditions of his confinement." *Mosely*, 532 F.3d at 1278.

The allegations in Christmas's complaint undercut his claim that Nabors and Hill were subjectively motivated to discipline Christmas because he filed grievances when they relocated him from the Jail's medical dorms into its general population. When Christmas asked to sign up for outdoor recreation, Nabors denied his request and told him that the Jail's medical staff had "determined that" Christmas was "not fit for outside recreation." When

Christmas repeated that request, Nabors told him that he would "be medically eligible to go to outside recreation" once the Jail's medical staff cleared him for relocation into general population. And when Christmas repeated his request for outdoor recreation a third time, Nabors responded that Christmas needed to convince the Jail's medical staff "to clear [him] for normal dorms" to gain access to outdoor recreation.  Then, when Christmas was finally relocated from the medical dorm to the Jail's general population, he accused Nabors of punishing him.  But according to Christmas, Nabors not only denied that accusation, but he also told Christmas that Christmas no longer "qualif[ied] for medical housing" and that he was "housed appropriately" based on his medical classification. In other words, Christmas alleges no facts to support his conclusory allegation that Christmas removed Nabors from the medical unit in retaliation for Christmas's complaints.  To the contrary, all his allegations support the conclusion that Christmas was transferred to general population because he no longer required medical housing, and the medical unit—not Nabors—was responsible for making that decision.

To be sure, Christmas also contends that his cane was taken as retaliation for filing grievances.  But he alleged that his cane was taken when he was transferred from the Jail's medical unit into its general population.  And allowing Christmas to take his cane into the general population, according to Lieutenant Nabors and Sergeant Hill, would have jeopardized the Jail's safety and security.  We find that explanation more than plausible.  *See, e.g., Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 285–86 (1st Cir. 2006) (noting that "a

cane . . . could be used as a weapon"). And Christmas has failed to allege any facts suggesting it was pretextual.

At bottom, Christmas failed to plausibly allege that Lieutenant Nabors and Sergeant Hill retaliated against him for filing grievances. Instead, his allegations suggest that he was relocated to the Jail's general population because the medical unit found it medically appropriate to do so. And taking Christmas's cane was necessary to preserve the Jail's safety and security. For these reasons, we cannot say that the district court erred in failing to construe Christmas's complaint as stating a claim for retaliation under the First Amendment.

### E. The district court did not err by failing to construe Christmas's complaint as stating a claim for deliberate indifference.

Finally, Christmas argues that the district court erred by failing to construe his complaint as stating a claim for deliberate indifference under the Eighth Amendment. Christmas asserts that he stated such a claim by alleging that Lieutenant Nabors and Sergeant Hill acted with deliberate indifference when they took his cane, even though they knew he had a serious medical need that required him to use a cane.

Like prisoners, pretrial detainees "have a right to receive medical treatment for their illnesses and injuries." *Taylor v. Hughes*, 920 F.3d 729, 732–33 (11th Cir. 2019). Deliberate indifference to a pretrial detainee's serious medical needs "is therefore a constitutional violation." *Id*. at 733 (citing *Estelle v. Gamble*, 429 U.S. 97, 103

(1976)).  To state a claim for deliberate indifference, Christmas needed to have alleged (1) that he had a serious medical need; (2) that Nabors and Hill exhibited deliberate indifference to that need; and (3) that Nabors' and Hill's deliberate indifference caused Christmas's injury.  *Id.* (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009)).

Christmas failed to allege that he suffered any injury when Nabors and Hill took his cane.  Instead, he contends that he "developed complications from his gunshot wound, including hernias," while at the Jail.  But he failed to allege a causal link between those complications and his inability to use a cane after being relocated to the Jail's general population.  So even assuming that Nabors and Hill acted with deliberate indifference when they took his cane, Christmas still failed to allege an essential element of his claim: that is, that Nabors' and Hill's deliberate indifference caused his injuries.  As a result, we cannot say that the district court erred by failing to construe Christmas's complaint as stating a claim for deliberate indifference.

## IV.

For these reasons, we **REVERSE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.